OAO91 (Rev. 12/03) Criminal Complaint

# UNITED STATES DISTRICT COURT

**NORTHERN** DISTRICT OF **CALIFORNIA**

UNITED STATES OF AMERICA
V.
MARK JENKINS, JR.

(Name and Address of Defendant)

CRIMINAL COMPLAINT **ORIGINAL**

Case Number:

3 10 70913 JCS

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about __October 16, 2010__ (Date) in __San Mateo__ County, in the __Northern__ District of __California__ defendant(s) did,

(Track Statutory Language of Offense)
knowingly possessed more than 28 grams or more of a mixture and substance containing cocaine base in the form of crack cocaine, and possessed it with the intent to deliver it to another person,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and (b)(1)(B)__ .

I further state that I am a(n) __Special Agent of the FBI__ and that this complaint is based on the following facts:
Official Title

See attached AFFIDAVIT OF FBI SPECIAL AGENT MATTHEW S. BEAUPAIN

Maximum Penalties:
Maximum term of imprisonment of 40 years; Mandatory minimum term of imprisonment of 5 years; Mandatory minimum of 4 years supervised release; $4,000,000 fine; and $100 special assessment

Continued on the attached sheet and made a part of this complaint: ☒ Yes ☐ No

Signature of Complainant

MATTHEW S. BEAUPAIN
Printed Name of Complainant

Sworn to before me and signed in my presence,

10/25/10
Date

at  San Francisco, CA
    City              State

Joseph C. Spero         Magistrate Judge
Name of Judge           Title of Judge         Signature of Judge



## AFFIDAVIT OF SPECIAL AGENT MATTHEW S. BEAUPAIN

I, Matthew S. Beaupain, Special Agent of the Federal Bureau of Investigation, being duly sworn, hereby declare as follows:

## I. INTRODUCTION

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since 2005. For approximately the past four years, I have been assigned to the San Francisco Office of the FBI, and have investigated cases involving violent gangs, drug trafficking activity and violent fugitives. During this time, I have participated in numerous local and federal search warrants and arrests involving alleged narcotics trafficking. I have received training at the FBI Academy in Quantico, Virginia, including training on Violent Street Gangs, Criminal Case Management, Informant Development, Title III Investigations and the identification, use, packaging and sales of controlled substances.

2. Through my training and experience, I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, pagers, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and to thwart law enforcement investigations. I have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics trade, and the security measures that narcotics traffickers often employ. I have also examined documentation of various methods by which methamphetamine, cocaine, marijuana, and other illicit drugs are smuggled, transported and distributed. I have participated in surveillance of narcotics traffickers. During surveillance, I have personally observed counter-surveillance techniques and the ways in which narcotics traffickers conduct clandestine meetings. I have also participated in investigations that involved the interception of wire communications, and I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance or some other investigative technique. As a federal agent, I am authorized to investigate violations of the

1  laws of the United States and am a law enforcement officer with authority to execute warrants
2  issued under the authority of the United States.
3  　　3. This affidavit is being submitted in support of a criminal complaint charging MARK
4  JENKINS, JR. with possession with intent to distribute a Schedule II controlled substance,
5  namely cocaine base in the form of crack cocaine, in violation of Title 21 U.S.C. §§ 841(a)(1)
6  and (b)(1)(B).
7  　　4. The statements contained in this affidavit are based on information provided to me by law
8  enforcement officers as well as my training, experience, and knowledge of this investigation.
9  Because this affidavit is being submitted for the limited purpose of supporting the issuance of a
10 criminal complaint, I have not included each and every fact known to me concerning this
11 investigation. I have set forth only those facts that I believe are necessary to establish probable
12 cause to support the complaint.
13 **II. PROBABLE CAUSE**
14 　　5. I have reviewed a felony report prepared by Detective Nicolas Douglas of the Menlo Park
15 Police Department (MPPD) regarding the arrest of JENKINS, JR. on October 16, 2010. I have
16 spoken to Detective Douglas and I have spoken to Sergeant Eric Cowans of the MPPD, who is
17 also an FBI Task Force Officer (TFO), and was also present at the arrest of JENKINS, JR. The
18 report contains the information described below.
19 　　6. On October 16, 2010, at approximately 9:51 p.m., Detective Douglas and Sergeant
20 Cowans were traveling Southbound on the 1600 block of Michigan Avenue in the City of East
21 Palo Alto (EPA). Detective Douglas and Sergeant Cowans observed a green Dodge Charger,
22 bearing California license plate number 6EEE319, parked blocking a public sidewalk in front of
23 the residence located at 1612 Michigan Avenue. The vehicle was parked in violation of 22500(f)
24 of the California Vehicle Code (CVC). Standing near the driver door of the vehicle were two
25 males. Detective Douglas and Sergeant Cowans recognized one of the males as being JENKINS,
26 JR., who is a suspect in a narcotics investigation that Detective Douglas and Sergeant Cowans
27 have recently participated in. Sergeant Cowans recognized the other male from past contact but
28 could not recall his name at the time. The other male was later identified as SCEDRICK

1  TIPPINS, who Detective Douglas and Sergeant Cowans would later learn was on California
2  Department of Corrections and Rehabilitation (CDCR) parole with a search condition.
3      7. Detective Douglas and Sergeant Cowans were familiar with the residence at 1612
4  Michigan Avenue and that it has been identified and recently used in connection with the sales
5  and distribution of tar heroin and cocaine base. Within approximately the last six months, search
6  warrants and arrests have been made in connection with the ongoing sales, transportation and
7  distribution of illegal narcotics and the possession of firearms in the immediate vicinity of the
8  residence. Detective Douglas and Sergeant Cowans believed that JENKINS, JR. and TIPPINS
9  were engaged in criminal activity, namely the sale and distribution of illegal narcotics.
10     8. Detective Douglas and Sergeant Cowans stopped their unmarked police SUV near the
11 rear of the Dodge Charger. Detective Douglas and Sergeant Cowans exited the SUV to contact
12 JENKINS, JR. and TIPPINS. Detective Douglas and Sergeant Cowans were wearing police
13 jerseys with a cloth police shield and a second patch with the words "POLICE" in yellow writing
14 on the front of their jerseys. On the rear of their jerseys, in large letters, was also the words
15 "POLICE." Both Detective Douglas and Sergeant Cowans were wearing their full duty belts.
16     9. JENKINS, JR. immediately turned and ran West through the driveway toward the
17 residence. While running JENKINS, JR. dropped an unknown item, later identified as a
18 Blackberry cellular telephone, and began reaching near his waistband as he was running to the
19 South side of the residence. Detective Douglas observed JENKINS, JR. remove his right hand
20 from his waistband area holding a black handgun. Detective Douglas removed his duty weapon
21 and yelled out to JENKINS, JR. in a loud voice, "Police don't move." JENKINS, JR. ignored
22 Detective Douglas and continued to run. Detective Douglas gave chase to JENKINS, JR.
23     10. JENKINS, JR. rounded the corner to the side yard and tripped over a bicycle and fell
24 forward with his hands outstretched in front of him. JENKINS, JR. immediately concealed his
25 hands underneath his body near his waistband area. JENKINS, JR. began rolling to his right side
26 and turning toward the direction of Detective Douglas. Detective Douglas had his service
27 weapon out and gave JENKINS, JR. repeated commands of "Police, show me your hands" and
28 for JENKINS, JR. to stay on his stomach. JENKINS, JR. eventually complied, and Detective

1  Douglas handcuffed JENKINS, JR. Detective Douglas asked if JENKINS. JR. had any weapons
2  on him, to which JENKINS, JR. said that he had a knife in his left front pants pocket. Detective
3  Douglas conducted a pat down search for weapons and recovered the knife from JENKINS, JR.'s
4  pocket. Detective Douglas stood JENKINS, JR. up and observed the handgun directly at
5  JENKINS, JR.'s feet. Detective Douglas walked JENKINS, JR. to the sidewalk where Sergeant
6  Cowans had detained TIPPINS. Detective Douglas immediately returned and recovered the
7  Blackberry cellular telephone and the handgun.

8  11. On the sidewalk Detective Douglas conducted a secondary search incident to arrest.
9  Detective Douglas recovered a black wallet from JENKINS, JR.'s left rear pocket, and a Huawei
10 Metro PCS cellular telephone from his right rear pocket. JENKINS, JR. also had $124 in folded
11 US Currency. In JENKINS, JR.'s wallet was his California issued Driver's License numbered
12 D1682901, bearing the name of MARK JENKINS, JR., and his photograph.

13 12. Detective Douglas conducted a registration check on the Dodge Charger and learned that
14 the registered owner was SHIEMESE FLOWERS. JENKINS, JR. advised that the vehicle was
15 not his and that it belonged to his wife. JENKINS, JR. advised Detective Douglas that his wife
16 was SHIEMESE FLOWERS. Sergeant Cowans asked TIPPINS whose vehicle was the Dodge
17 Charger and TIPPINS stated "That's his" motioning to JENKINS, JR.

18 13. Based on there training and experience Detective Douglas and Sergeant Cowans know
19 that drug dealers often use vehicles registered to other persons to facilitate their illegal activities.
20 Drug dealers often store or conceal weapons, ammunition, illegal narcotics, pay/owe sheets, radio
21 scanners, etc., in vehicles. Sergeant Cowans knows from a previous arrest and investigation of
22 JENKINS, JR., that SHIEMESE FLOWERS is JENKINS, JR. significant other and that they had
23 a child together. Sergeant Cowans observed no other persons in the vicinity of the arrest and
24 asked TIPPINS if there was anyone else with them. TIPPINS advised that there was no one else
25 with them. TIPPINS advised that TIPPINS had arrived in his own vehicle, pointing out to
26 Detective Douglas a grey/silver vehicle across the street from the residence. A parole search of
27 that vehicle recovered nothing illegal, but did confirm that the vehicle was in the possession of
28 TIPPINS.

1   14. Prior to towing the Dodge Charger, Detective Douglas searched the vehicle and located approximately 110.73 grams gross of base cocaine in the form of crack cocaine, and $1,000.00 in United States Currency. Detective Douglas also located an invoice with the name of MARK FLOWERS, and the vehicle registration with the registered owner of SHIEMESE FLOWERS. It is believed that JENKINS, JR. also uses the alias of "MARK FLOWERS", which has later been identified in public records associated to his social security number.

15. JENKINS, JR. was very talkative and kept asking Detective Douglas "what was happening." Detective Douglas advised JENKINS, JR. of the charges and JENKINS, JR. made spontaneous statements that the crack cocaine was not his and denied any knowledge of a handgun. Although JENKINS, JR. denied that the handgun was his, he advised Detective Douglas that he does carry a firearm for his protection because he had been robbed in the past, and that he would shoot at persons or the police to protect himself.

16. Detective Douglas and Sergeant Cowans transported JENKINS, JR. to the San Mateo County Medical Center (SMCMC) where he was treated for his injuries that he sustained when he fell fleeing from Detective Douglas. Detective Douglas advised JENKINS, JR. of his *Miranda* rights pursuant to a department issued form. JENKINS, JR. agreed to waive those rights, but JENKINS, JR. did not say anything significant relating to the incident.

16. While at the SMCMC, a hospital staff member advised Sergeant Cowans that a woman claiming to be JENKINS, JR.'s wife was on the telephone. Sergeant Cowans took the telephone call and spoke with a woman who initially identified herself as "Bebe." Sergeant Cowans asked if this was SHIEMESE FLOWERS, to which the caller said that it was. Sergeant Cowans briefly explained to FLOWERS what had occurred and asked for FLOWERS' telephone number. FLOWER's became uncooperative and refused to give Sergeant Cowans her telephone number or any further information.

17. Detective Douglas took possession of the suspect cocaine base in the form of crack cocaine and conducted a presumptive field test using NARCOTEST #13. The suspect cocaine base tested positive for cocaine. Detective Douglas submitted the suspect base cocaine in the form of crack cocaine to the San Mateo County Criminal Laboratory for analysis. Detective

1  Douglas took the handgun and other evidence into custody and booked them into MPPD as
2  Evidence.

3  **III.   CONCLUSION**

4  17. For the reasons stated above, I submit that there is probable cause to believe that MARK
5  JENKINS, JR. knowingly and intentionally possessed with intent to distribute a Schedule II
6  controlled substance, namely, approximately 110.73 grams gross of a mixture and substance
7  containing a detectable amount of crack cocaine on October 16, 2010, in violation of 21 U.S.C.
8  §§ 841(a)(1) and (b)(1)(B).

_____
Matthew S. Beaupain
Special Agent, Federal Bureau of Investigation

Sworn to before me this
25th day of October

_____
HONORABLE JOSEPH S. SPERO
UNITED STATES MAGISTRATE JUDGE